UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JTE ENTERPRISES, INC.,

                Plaintiff,                              **MEMORANDUM OF**
       v.                                       **DECISION AND ORDER**
                                                        13-CV-1425 (ADS) (WDW)

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York, THOMAS DI
NAPOLI, in his capacity as Comptroller of the State
of New York, PETER M. RIVERA, as Commissioner
of the State of New York Labor Department, and
LEONARD D. POLLETTA, Chairman of the
Underemployment Insurance Appeal Board,

                Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**Cobert, Haber & Haber**
*Attorneys for the Plaintiff*
1050 Franklin Avenue, Suite 300
Mineola, NY 11501
   By:  Eugene F. Haber, Esq., of Counsel

**New York State Attorney General's Office**
*Attorneys for the Defendants*
200 Old Country Road, Suite 460
Mineola, NY 11501
   By:  Toni E Logue, Assistant Attorney General
          Richard Yorke, Volunteer Attorney

**SPATT, District Judge.**

     On March 19, 2013, the Plaintiff JTE Enterprises, Inc. (the "Plaintiff"), commenced this action against Andrew M. Cuomo, in his official capacity as Governor of the State of New York; Thomas Di Napoli, in his capacity as Comptroller of the State of New York; Peter M. Rivera, as Commissioner of the State of New York Labor Department (the "Department of Labor"); and Leonard D. Polletta, Chairman of the Unemployment Insurance Appeal Board (the "UIAB" and collectively, the "Defendants").

1

The Plaintiff seeks an order from the Court (1) classifying the drivers of its taxi cab vehicles as either independent contractors or as employees of the Plaintiff; (2) in the event the Court determines the drivers are independent contractors, declaring that a UIAB determination classifying the drivers as employees is null and void; (3) pursuant to 42 U.S.C. § 1983, finding that the Department of Labor denied the Plaintiff its basic due process rights by allegedly preventing the Plaintiff from appealing the UIAB's determination; and (4) in the event the Court determines the drivers are employees, directing a refund of all monies the Plaintiff paid for sales taxes on the leases of the taxi cab vehicles to the drivers.

Presently before the Court is a motion by the Defendants to dismiss the Plaintiff's Complaint in its entirety, which the Defendants have brought under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (6). For the reasons that follow, the Court grants the Defendants' motion.

## I. BACKGROUND

The Plaintiff operates a taxi cab and livery service in Suffolk County, New York. The Plaintiff's employees include a clerical staff and dispatchers who work in its Islandia office. For these employees, the Plaintiff pays unemployment insurance premiums.

However, with respect to the drivers of its taxi cab vehicles, the Plaintiff uses "for hire" vehicles, for which it hires drivers allegedly as independent contractors. The drivers do not work on a regular basis and do not have a regular schedule. They are also free to work for other "for hire" taxi cab companies that are in competition with the Plaintiff. In addition, the drivers receive no benefits and no taxes or social security payments are withheld because they are not paid a salary.

Rather, the drivers sign lease agreements to use one of the Plaintiff's "for hire" taxi cabs, by which they agree to pay the Plaintiff a percentage of the income he earns that day from operating the taxi cab. During the day, the Plaintiff dispatches the driver to its customers, who call in requesting transportation services. However, the drivers are permitted to decline any of these calls for cab service request.

According to the Plaintiff, the drivers of its "for hire" vehicles should be classified as independent contractors because they are not subject to the Plaintiff's dominion or control so as to be classified as employees entitled to unemployment insurance benefits. Also, the New York State Department of Taxation and Finance collects a sales tax from the Plaintiff on the leases it enters into with the drivers.

Nevertheless, the Department of Labor audited the Plaintiff's books and records for the period of December 1, 1999 through August 31, 2003. As a result of the audit, the Department of Labor concluded that the Plaintiff owed $35,801.57 for unemployment insurance premiums for the drivers of the "for hire" vehicles. It also assessed a fifty percent fraud penalty of $17,900.78.

The Plaintiff opposed the Department of Labor's decision that the drivers were employees rather than independent contractors and further contested the fraud penalty assessment. Accordingly, the Plaintiff challenged the decision and the Department of Labor by initiating an Article 78 proceeding under the New York Civil Practice Law and Rules. Thereafter, the Plaintiff and the Department of Labor entered into a Stipulation of Settlement and Discontinuance whereby the Department of Labor consented to process the Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") in

accordance with the exclusive review procedures provided in Article 18 of the New York Labor Law.

The proceeding occurred over a period of seven months and was overseen by ALJ Craig Fishman ("Fishman"), who conducted hearings and considered both documentary evidence and oral testimony. At the proceeding's conclusion, on December 28, 2009, ALJ Fishman issued a decision wherein he held that the drivers were employees as opposed to independent contractors, and as such, owed the $35,801.57 in unemployment insurance premiums. However, ALJ Fishman reversed the assessment of the fraud penalty against the Plaintiff.

Both the Plaintiff and the Department of Labor appealed ALJ Fishman's decision to the UIAB. In this regard, the Plaintiff disputed the finding that the drivers were employees instead of independent contracts, while the Department of Labor challenged the reversal of the fraud penalty assessment. In a decision dated November 23, 2010, the UIAB (1) affirmed ALJ Fishman's determination that the drivers were employees, thus requiring the Plaintiff to pay the $35,801.57, but (2) reinstated the fifty percent fraud penalty that had been assessed by the Department of Labor. In addition, the UIAB decision advised that appeals should be made to the New York State Appellate Division, Third Department (the "Third Department") within thirty days from the mailing date of the decision.

On December 13, 2010, the Plaintiff served a Notice of Appeal on the UIAB, which the UIAB confirmed receiving. Apparently, the UIAB informed the Plaintiff's counsel that the appeal would be processed and that it would mail them correspondence concerning the appeal. However, according to the Plaintiff, during the course of the six-

year dispute between the Plaintiff and the Department of Labor, "it was common for notices and/or correspondence to take in excess of six months to be mailed by the Department of Labor and/or [UIAB]." (Compl., ¶ 21.) Further, with respect to the correspondence concerning the appeal, the Plaintiff claims that it never received this correspondence because the UIAB incorrectly mailed it to its lawyers' previous address. In this regard, in August of 2009, the Plaintiff's lawyers had moved out of their former office and relocated to another office within the same building. The Post Office forwarded their mail until March of 2010.

On March 13, 2011, the Plaintiff faxed a second Notice of Appeal to the UIAB. Three days later, on or about March 16, 2011, the UIAB sent a "Notice of Receipt of Appeal to Court" to both the Plaintiff's business address and to its attorneys. This notice (1) informs appellants of the special rules and instructions for unemployment insurance appeals which have been established by the Third Department; (2) instructs appellants to write to the Attorney General's Office in order to obtain a copy of the court's instructions; and (3) warns that failure to serve and file court papers within nine months after the date of appeal will result in the Third Department deeming the appeal abandoned. However, the Plaintiff alleges that the UIAB again mailed this notice to the address associated with its attorneys' previous office.

Of note, the November 23, 2010 UIAB decision and the March 16, 2011 notice were both sent to the previous address of the Plaintiff's attorneys. However, the Complaint offers no explanation as to why the Plaintiff's lawyers received the UIAB decision but not the notice, even though both were sent after the Post Office stopped forwarding the Plaintiff's mail.

5

Of further note, Section 800.17 of the Third Department's Court Rules provide that instructions on appealing a decision of the UIAB are available from the clerk of the court. These instructions unambiguously advise that based on section 800.12 of the Third Department's Rules of Practice, there is a nine-month time limit for filing court papers in connection with a UIAB appeal.

In any event, purportedly neither the Plaintiff nor its counsel received any correspondence or communication from either the New York State Appellate Division, Third Department (the "Third Department") or the UIAB. As such, the Plaintiff alleges that because the UIAB and the Department of Labor failed to send its attorneys the appropriate correspondence, it never perfected its appeal.

On February 10, 2012, the Plaintiff was notified by the Department of Labor that its appeal was deemed abandoned by the Third Department, which dismissed the appeal for failure to timely perfect. Consequently, the Third Department never reviewed the decision of the Department of Labor or the decision of the UIAB. The Complaint contains no allegations that the Plaintiff or its attorneys every contacted or attempted to contact the UIAB or the Third Department about the appeal in the fourteen-month period between when it filed its Notice of Appeal on December 13, 2010 and when the Third Department dismissed the appeal on February 10, 2012.

## II. DISCUSSION

### A. Legal Standards

**1**. **Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b) (1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

6

it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard set forth below, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113. In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. Makarova, 201 F.3d at 113.

**2. Motion to Dismiss Standard Under Fed. R. Civ .P. 12(b) (6)**

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In this regard, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Iqbal, 556 U.S. at 678; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).

As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (quoting Iqbal, 556 U.S. at 678). Further, in its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference,

to matters of which judicial notice may be taken, or to documents either in [a] plaintiff['s] possession or of which [a] plaintiff[ ] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir.1993)

**B. As to Whether the Plaintiff's Claims are Barred by the Eleventh Amendment**

According to the Defendants, under the Eleventh Amendment of the United States Constitution and the principles of sovereign immunity, this Court lacks subject matter jurisdiction over this lawsuit, because (1) the Plaintiff brings this action solely against the Defendants in their official capacities and (2) the Plaintiff makes no request for prospective relief to address ongoing constitutional violations. The Court agrees that the Eleventh Amendment and principles of sovereign immunity bars the Plaintiff's lawsuit and, therefore, dismisses the Complaint in its entirety.

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved. See Carver v. Nassau Cnty. Interim Fin. Auth., 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit.") (citing Wisc. Dep't of Corr. v. Schacht, 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998)); see also Garcia v. Paylock, 13-CV-2868 KAM, 2014 WL 298593, at *2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under Rule 12(b) (1), or as an affirmative defense analyzed under Rule 12(b)(6).").

Of importance, this "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), . . . in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to Fed. R. Civ. P. 12(b)(1)], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 (2d Cir. 2007) (citations omitted). As such, in accordance with the approach taken by other district courts within this Circuit, the Court will apply the stricter standard set under Fed. R. Civ. P. 12(b)(6) while analyzing Defendants' sovereign immunity arguments. See Tiraco v. New York State Bd. of Elections, 12-CV-2273 KAM MDG, 2013 WL 4046257, at *4 n.6 (E.D.N.Y. Aug. 7, 2013) (noting that "[t]his distinction [ ] does not alter the outcome" of the case because "the court [ ] considered only the pleadings and the relevant state and federal law and [drew] all inferences in Plaintiff's favor") (citations omitted); McMillan v. N.Y. State Bd. of Elections, No. 10–CV–2502 (JG)(VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; see also Gollomp v. Spitzer, 568 F.3d 355, 365 (2d Cir. 2009). "Although by its terms the Amendment applies only to suits against a State by citizens of another State," the Supreme Court has consistently "extended the Amendment's applicability to suits by citizens against their own States." Bd. of Trustees

of Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) (collecting cases); see also Daigneault v. Judicial Branch, Connecticut, 309 F. App'x 518, 519 (2d Cir. 2009) ("[T]he Eleventh Amendment bars suits against a non-consenting state in federal court brought by a state's own citizens or citizens of another state.") (citing Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)); CSX Transp., Inc. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 94 (2d Cir. 2002) ("In addition to its explicit restriction of suits by 'Citizens of another State,' the Eleventh Amendment has been construed to protect an unconsenting state from suit by its own citizens.'") (quoting Edelman, 415 U.S. at 662–63); Tiraco v. New York State Bd. of Elections, 12-CV-2273 KAM MDG, 2013 WL 4046257, at *4 (E.D.N.Y. Aug. 7, 2013) ("The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens.") (citing Hans v. Louisiana, 134 U.S. 1, 10–11, 10 S. Ct. 504, 33 L. Ed. 842 (1890)).

In other words, "the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." Gollomp, 568 F.3d at 366 (citation and internal quotation marks and alterations omitted); see also Miller v. Carpinello, No. 06 Civ. 12940(LAP), 2007 WL 4207282, at *2 (S.D.N.Y. Nov. 20, 2007) ("The Eleventh Amendment bars suits in federal court by citizens against a state and its agencies, absent waiver of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress.").

Further, a suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." Lee v. Dep't of Children & Families, 939 F. Supp. 2d 160, 165–66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. See e.g., Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (citing Green v. Mansour, 474 U.S. 64, 73, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law. See Edelman, 415 U.S.

at 663; Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In this regard, through the doctrine of Ex Parte Young, a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." CSX Transp., Inc., 306 F.3d at 98 (internal quotation marks and alteration omitted); see also Arthur v. Nyquist, 573 F.2d 134, 138 (2d Cir.1978).

In this case, none of the Plaintiff's four causes of action seek prospective relief from this Court to address an ongoing violation of federal law. In this regard, the Plaintiff's first claim seeks a declaration from this Court classifying the Plaintiff's drivers as either employees or independent contractors. While the classification of the drivers may have ongoing ramifications for the Plaintiff's future state tax obligations, the Plaintiff does not suggest how a declaration by this Court will address an ongoing violation of federal law.

As to the Plaintiff's second claim, the Plaintiff asks this Court, in the event the Court determines the drivers are independent contractors, to issue an order essentially undoing the November 23, 2010 decision of the UIAB, which determined that the Plaintiff's drivers were employees and not independent contractors for state taxation purposes and upheld the Department of Labor's tax assessment. Again, the Court fails to see how such an order would provide any prospective relief as the Plaintiff raises no allegations concerning ongoing violations of federal law.

The Plaintiff's third claim also does not implicate an ongoing violation of federal law. Specifically, the Plaintiff asks this Court to determine that it was previously denied due process in connection with the UIAB's alleged failure to send the Plaintiff's attorneys the necessary instructions concerning how to perfect its appeal of the

November 23, 2010 determination to the Third Department. The Plaintiff does not raise any ongoing procedural due process violations which would permit this Court to provide it with prospective relief.

Concerning the Plaintiff's fourth and final claim, in the event this Court classifies the drivers as employees, the Plaintiff seeks a refund for the amount it paid in sales taxes on the leases for its "for hire" vehicles. This is clearly retrospective relief concerning the refund of state tax payments, not prospective relief designed to address an ongoing violation of federal law.

Finally, while the Plaintiff brings this lawsuit against the Defendants all in their official capacities, the Court notes that even if the Plaintiff brought this action against the Defendants in their individual capacities, the Plaintiff's claims would still fail because it has not alleged personal involvement by the Defendants. See Al–Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). Indeed, the Plaintiff has not asserted any allegations suggesting personal involvement by any of the Defendants in the purported actions taken by the UIAB and the Department of Labor.

In sum, the Plaintiff's lawsuit is barred by the Eleventh Amendment and principles of sovereign immunity. Therefore, the Court grants the Defendants' motion to dismiss and dismisses the Complaint in its entirety with prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motion by the Defendants to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6) is granted. The Court finds that the Plaintiff's lawsuit is

barred by the Eleventh Amendment and by the principles of sovereign immunity and, therefore, dismisses the Plaintiff's Complaint in its entirety; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
February 15, 2014

                                           _/s/ Arthur D. Spatt_
                                           ARTHUR D. SPATT
                                           United States District Judge